IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 5:19-cr-00025-005 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| JONATHAN NEICE ) | United States District Judge |

**MEMORANDUM OPINION**

Pending before the court are Jonathan Neice's motion for relief pursuant to 28 U.S.C. § 2255 and the government's response thereto. (Dkt. Nos. 301, 328.)[1] For the reasons stated below, the court will deny Neice's § 2255 motion and decline to issue a certificate of appealability.

I. BACKGROUND

In a multi-defendant indictment, count six charged Neice with distribution and knowing and intentional possession with the intent to distribute a mixture and substance containing detectable amounts of heroin and acetyl fentanyl, Schedule I controlled substances, and fentanyl, a Schedule II substance, the use of which resulted in the death of J.H. and the serious bodily injury of J.W., in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

According to a signed Statement of Facts, Neice obtained three small packets of controlled substances (mixtures of heroin, fentanyl, and acetyl-fentanyl) from Stacey Marston, a man who worked with Neice in Harrisonburg, Virginia. (Dkt. No. 106.) Neice kept one of the packets. Soon after, and at the same location, Neice distributed two packets of the controlled substances to J.H., who in turn gave one of the packets to J.W. Both J.H. and J.W. ingested the

---

[1] Also pending is Neice's motion for reduction of sentence pursuant to the First Step Act and a motion regarding counsel for that request. (Dkt. Nos. 303, 318.) The court will address those motions in a separate opinion and order.

1

controlled substances distributed by Neice and overdosed as a result. J.H. died of the overdose, and J.W. survived. The cause of J.H.'s death and J.W.'s serious bodily injury was toxicity from the drugs ingested by them and distributed by Neice.

Shortly after the overdoses, law enforcement located and arrested Neice. After having been advised of his *Miranda* rights, Neice voluntarily admitted that, at J.H.'s request, Neice had obtained two small foil packets of controlled substances from Stacey Marston and then distributed the packets to J.H.

On July 31, 2019, pursuant to a written plea agreement, Neice pleaded guilty to count six of the indictment. At his plea hearing, Neice admitted under oath to committing the charged offense via a detailed Statement of Facts supporting his plea. In his written plea agreement, Neice waived his right to appeal and to collaterally attack his sentence. (Dkt. No. 81 at 7.) In his plea agreement, Neice expressed satisfaction with his attorney; willingly stipulated facts sufficient for conviction; and indicated he had read the plea agreement in its entirety and understood each provision. (*Id.* at 11, 12.)

On October 8, 2020, after granting a motion for downward departure, the court sentenced Neice to 132 months incarceration followed by five years of supervised release. Neice did not appeal.

On August 2, 2021, Neice filed the instant motion for relief pursuant to 28 U.S.C. § 2255. He contends that, although he pleaded guilty to possessing with the intent to distribute and distribution of a controlled substance, his conduct did not meet the legal definition of distribution sufficient to support a conviction for the charged offense. Neice also argues that he received ineffective assistance of counsel with respect to his decision to plead guilty because his attorney failed to identify the issue raised in his first claim. The government argues that Neice's claims

are procedurally defaulted, Neice waived his right to pursue this action, and that even if the court were to consider Neice's claims, they fail on their merits.

## II.  ANALYSIS

### A.  Section 2255

Under 28 U.S.C. § 2255, a movant may attack his sentence or conviction on the grounds that it was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255(a).  The movant bears the burden of proving grounds for collateral relief by a preponderance of the evidence.  *See United States v. Cook*, Criminal No. 1:11-cr-188, 2019 WL 921448, at *1 (E.D. Va. Feb. 25, 2019) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967)).  In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  § 2255(b).  An evidentiary hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record or when a credibility determination is necessary to resolve the issue.  *United States v. Witherspoon*, 231 F.3d 923, 925–27 (4th Cir. 2000).  The record in this case conclusively establishes that Neice is not entitled to relief, so the court may address the motion without an evidentiary hearing.

### B.  Procedural Default and Waiver

The government argues that Neice's claims are procedurally defaulted and subject to the collateral attack waiver in his plea agreement.  When, for example, a defendant fails to raise an issue on direct appeal, he is said to have procedurally defaulted on that issue, meaning that "the

claim may be raised in [a collateral attack] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998).  In order to show "cause" for a procedural default, a movant must demonstrate that some objective factor external to the record impeded his counsel's efforts to raise the claim. *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Turner v. Jabe*, 58 F.3d 924, 927 (4th Cir. 1995). Prejudice is defined as an error that "worked to his actual and substantial disadvantage" and was "of constitutional dimension."  *United States v. Frady*, 456 U.S. 152, 170 (1982).

The procedural default rule applies when, as here, a defendant has waived his right to appeal in a plea agreement.  *See United States v. Jones*, No. 94-6209, 56 F.3d 62 (Table), 1995 WL 321263, at *1 (4th Cir. May 30, 1995) ("Although Jones's plea agreement prevented him from appealing, this is not sufficient cause for his procedural default.").  However, both the appeal waiver and the collateral attack waiver in Neice's plea agreement contain an exception for ineffective assistance of counsel claims.  (Dkt. No. 81 at 7.)  Such claims are appropriately brought in a § 2255 motion and are not subject to an appeal or collateral attack waiver.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003).  Neice's claim related to the statutory definition of distribution may be procedurally defaulted, but that claim is directly related to the merits of Neice's ineffective assistance claim, so the court will proceed to analyze both as if they have not been waived or procedurally defaulted.

**C. Distribution and Possession With Intent to Distribute**

Neice argues that his conduct does not meet the statutory definition of "distribution" under federal criminal law.  *See* 21 U.S.C. § 841.  He contends that he was only an addict sharing drugs with other addicts, and Congress did not intend to punish drug addicts as harshly as drug dealers.

The elements of possession with intent to distribute a narcotic controlled substance are: (1) possession of the narcotic controlled substance, (2) knowledge of the possession, and (3) intent to distribute the narcotic controlled substance. *United States v. Rock*, No. 20-4369, 2022 WL 176885, at *1 (4th Cir. June 1, 2022) (citing *United States v. Randall*, 171 F.3d 195, 209 (4th Cir. 1999)). The elements of distribution of a narcotic controlled substance are: (1) distribution of the narcotic controlled substance; (2) knowledge of the distribution; and (3) intent to distribute the narcotic controlled substance. *Id.* The term "distribute" means "to deliver . . . a controlled substance . . .," and the term "deliver" means "the actual, constructive, or attempted transfer of a controlled substance . . . whether or not there exists an agency relationship." 21 U.S.C. §§ 802(8), (11); *see also United States v. Washington*, 41 F.3d 917, 919 (4th Cir. 1994).

Distribution under 21 U.S.C. § 841(a)(1) is not limited to the sale of controlled substances. *Washington*, 41 F.3d at 919. Sharing drugs with another constitutes "distribution" under § 841(a)(1). *Id.* (citing *United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir. 1979)). In *Washington*, the defendant was not involved in any way with trafficking drugs. "He did not sell drugs, and he was not a courier of drugs. He simply bought cocaine, which he planned to use himself and to share with his friends." *Id.* Even so, the court concluded that defendant's "intent to share the cocaine with others is sufficient for a court to find that he possessed drugs with intent to distribute." *Id.* Similar to the defendant in *Washington*, Neice intended to distribute the drugs he had obtained from Marston, and he admitted to the distribution. Therefore, Neice's conduct meets the broad definition of distribution for purposes of § 841(a)(1). *See id.* (explaining that "facilitation of the sale of narcotics" was prohibited before Congress enacted § 841, whereas § 841 proscribes "distribution" of controlled substances, as opposed to "facilitation

5

of sale. . . . Thus, in enacting the 1970 Act, Congress intended to proscribe a range of conduct broader than the mere sale of narcotics").

In his parallel motion under the First Step Act, which is grounded on the same arguments as this § 2255 motion, Neice cites *United States v. Semler*, 858 F. App'x 533 (3d Cir. 2021), which held that individuals who jointly and simultaneously acquire possession of a small amount of a controlled substance for personal use do not satisfy the definition of distribution under the Controlled Substances Act. This case is distinguishable because Neice did not jointly acquire the drugs with the person to whom he eventually transferred them. Moreover, the Third Circuit case runs contrary to the broad definition of distribution adopted in the Fourth Circuit and other circuit courts. *See, e.g.*, *United States v. Rock*, Criminal No. 1:19CR56, 2020 WL 760399, at *3 n.1 (N.D.W. Va. Feb. 14, 2020) (explaining that the Fourth Circuit and other circuits "have defined 'distribution' broadly," and collecting cases "involving distribution under § 841(a) which support a broad construction of the offense").

For these reasons, Neice's claim that his conduct does not satisfy the statutory definition of distribution is without merit.

**D. Ineffective Assistance of Counsel**

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, counsel's performance must have been deficient, which means that the errors were so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* The level of performance is required to be "below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. Second, the deficient performance must

have prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the defendant was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Neice argues that his counsel was ineffective by giving him bad advice about his ability to defend against the distribution charge. Yet as discussed above, Neice's conduct fits neatly into the broad statutory definition of narcotic distribution. Therefore, the advice of Neice's counsel was in no way deficient.[2]

Neice's ineffective assistance claim can be dismissed without a hearing.

## D. Certificate of Appealability

When issuing a final order adverse to the § 2255 movant, the court must issue or deny a certificate of appealability. *See* Fed. R. Gov. § 2255 Proc. 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

The court declines to issue a certificate of appealability because Neice has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's assessment of his claims debatable or wrong.

---

[2] To the extent that Neice could argue that his attorney should have advised him to reject the plea based on the Third Circuit's interpretation of distribution in the *Semler* case, cited above, the court notes that *Semler* was decided nearly two years after Neice pleaded guilty.

## III.  CONCLUSION

For these reasons, the court will deny Neice's § 2255 motion and decline to issue a certificate of appealability.  The court will issue an appropriate order.

Entered: July 22, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge